The Hill Law Firm
5132 York Blvd., #50681
Los Angeles, CA 90042
(424) 282-3836
Tasha Hill, SBN: 301865
tashahilllaw@gmail.com

TransLatina Coalition
3055 Wilshire Blvd., # 350
Los Angeles, CA 90010
(833) 847-2331
Madison Fairchild, SBN: 298308
madisonf@translatinacoalition.org

Attorneys for Plaintiff, Coretta Simo Love Monk

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORETTA SIMO LOVE MONK, | Case No.: 2:20-cv-2631 |
| Plaintiff, | |
| vs. | COMPLAINT FOR DAMAGES - VIOLATIONS OF 42 U.S.C. § 1983; CAL. CIV. CODE § 52.1; AND CAL. CIV. CODE § 1714. |
| ALEX VILLANUEVA, ROBERT J. OLMSTEAD, JOSEPH E. DEMPSEY, PATRICK J. JORDAN, SERGIO A. ALOMA, AGUSTIN DEL CALLE, ROOSEVELT JOHNSON, ELIER MOREJON, CHERYL A. NEWMAN-TARWATER, KAREN S. DALTON, LAURA E. LECRIVAIN, KEN MCWAID, COUNTY OF LOS ANGELES; LOS ANGELES COUNTY SHERIFF'S DEPARTMENT; AND DOES 1 THROUGH 20, | |
| Defendants | |

**DEMAND FOR JURY TRIAL**

## I.    VENUE AND JURISDICTION

1.      Plaintiff presents federal claims for relief under 42 U.S.C. § 1983. Accordingly, federal jurisdiction is conferred on this Court by 28 U.S.C. §§1331 and 1343.  Plaintiff's state law claims are so related to her federal law claims that they form part of the same case or controversy.  Accordingly, supplemental jurisdiction over the state law claims is conferred upon this Court by 28 U.S.C. § 1367.

2.      Plaintiff's claim arise out of acts of the Los Angeles County Sheriff's Department in the County of Los Angeles, State of California. Plaintiff timely filed a governmental claim against the Defendants for the State Causes of action which was rejected by the Defendants.  Accordingly, venue is proper within the Central District of California.

## II.    PARTIES

3.      At all times relevant hereto, Plaintiff, CORETTA SIMO LOVE MONK ("Ms. Monk") is and was a resident of the County of Los Angeles, California.  Ms. Monk's legal name at the time relevant to this complaint was Corey Adam Monk, and that is the name she was booked and incarcerated under by Defendants.

4.      Defendant COUNTY OF LOS ANGELES (hereafter "County") is a public entity organized and existing under the laws of the State of California. Defendant

1  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT (hereafter "LASD") is a

2  public entity within the meaning of California law, and is a County agency.  These

3  Defendants are sued in their own right for a County and/or LASD policy, practice

4  or custom that caused Plaintiff's injuries in violation of one or more federal

5  constitutional guarantees under 42 U.S.C. § 1983, and on Plaintiff's state law

6  claims under Civil Code § 52.1.

7  5.    All individual defendants are named based on their personal involvement

8  and/or supervisorial liability for their role in the constitutional deprivations alleged

9  herein, including but not limited to their establishment, setting in motion, failing to

10  terminate, ratification, implementation, institution, and/or execution of the

11  discriminatory actions, policies, practices and customs against transgender inmates

12  in the Los Angeles County jails, and/or failure to adequately train or supervise LASD

13  personnel who engaged in the conduct alleged herein.

14  6.    At all times relevant herein, Defendant Sheriff ALEX VILLANUEVA was

15  an employee of the Los Angeles County Sheriff's Department, and acting within

16  the course and scope of his employment.  Defendant Villanueva is sued in his

17  official capacity as head of the Los Angeles County Sheriff's Department, and in

18  his personal capacity.

19  7.    At all times relevant herein, Defendant Assistant Sheriff ROBERT J.

20  OLMSTEAD was an employee of the Los Angeles County Sheriff's Department,

1    and acting within the course and scope of his employment.  Defendant Olmstead is

2    sued in his personal capacity.

3    8.    At all times relevant herein, Defendant Chief JOSEPH E. DEMPSEY was an

4    employee of the Los Angeles County Sheriff's Department, and acting within the

5    course and scope of his employment.  Defendant Dempsey is sued in his personal

6    capacity.

7    9.    At all times relevant herein, Defendant Chief PATRICK J. JORDAN was an

8    employee of the Los Angeles County Sheriff's Department, and acting within the

9    course and scope of his employment.  Defendant Jordan is sued in his personal

10    capacity.

11    10.    At all times relevant herein, Defendant Commander SERGIO A. ALOMA

12    was an employee of the Los Angeles County Sheriff's Department, and acting

13    within the course and scope of his employment.  Defendant Aloma is sued in his

14    personal capacity.

15    11.    At all times relevant herein, Defendant Commander AGUSTIN DEL

16    CALLE was an employee of the Los Angeles County Sheriff's Department, and

17    acting within the course and scope of his employment.  Defendant Del Calle is

18    sued in his personal capacity.

19    12.    At all times relevant herein, Defendant Commander ROOSEVELT

20    JOHNSON was an employee of the Los Angeles County Sheriff's Department, and

1  acting within the course and scope of his employment.  Defendant Johnson is sued

2  in his personal capacity.

3  13.    At all times relevant herein, Defendant Commander ELIER MOREJON was

4  an employee of the Los Angeles County Sheriff's Department, and acting within

5  the course and scope of his employment.  Defendant Morejon is sued in his

6  personal capacity.

7  14.    At all times relevant herein, Defendant Commander CHERYL A.

8  NEWMAN-TARWATER an employee of the Los Angeles County Sheriff's

9  Department, and acting within the course and scope of her employment.

10  Defendant Newman-Tarwater is sued in her personal capacity.

11  15.    At all times relevant herein, Defendant Assistant Division Director KAREN

12  S. DALTON was an employee of the Los Angeles County Sheriff's Department,

13  and acting within the course and scope of her employment.  Defendant Dalton was

14  a decision-maker on the gender identity committee LASD uses to determine

15  appropriate housing for transgender woman.  Defendant Dalton is sued in her

16  personal capacity.

17  16.    At all times relevant herein, Defendant Captain LAURA E. LECRIVAIN

18  was an employee of the Los Angeles County Sheriff's Department, and acting

19  within the course and scope of her employment.  Defendant LeCrivain is a Captain

20  at Twin Towers Jail.  Defendant LeCrivain is sued in her personal capacity.

17.    At all times relevant herein, Defendant Captain KEN MCWAID was an employee of the Los Angeles County Sheriff's Department, and acting within the course and scope of his employment.  Defendant McWaid is a Captain at Twin Towers Jail.  Defendant McWaid is sued in his personal capacity.

18.    The above individual Defendants (hereafter "Supervisory Defendants") are, among other duties, responsible for the training, supervision, control, assignment, and discipline of both sworn and civilian personnel of the LASD and the County who work in, operate, administer, and manage the jails, and for the formulation, promulgation, adoption, application, administration, and enforcement of policies, rules, regulations, and practices of the LASD jails.

19.    Plaintiff is ignorant of the true names and capacities of Defendants sued herein DOES 1 through 20 inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

20.    Plaintiff is informed and believes and thereupon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the acts and/or omissions of said fictitiously named Defendants.

21.    At all times relevant, herein, Defendants Does 1-20, were deputy sheriffs, sergeants, captains, lieutenants, commanders and/or civilian employees, agents and

representatives of Los Angeles County, LASD, and/or the Jail.  At all times relevant hereto, said Defendants were acting under color of law, to wit, within the course and scope of their employment as deputies, sergeants, captains, and/or civilian employees of Los Angeles County or LASD, and with the knowledge and consent of their employers.  Each said Defendant is sued in his or her personal capacity.

22.    At all times relevant herein, defendants DOES 11 through 20, inclusive, and each of them, were supervisors and policy makers for the LASD and the jails (along with the individual Defendants above, these Does are hereafter "Supervisory Defendants").  Among other duties, they are responsible for the training, supervision, control, assignment, and discipline of both sworn and civilian personnel of the LASD and the County who work in, operate, administer, and manage the jails, and for the formulation, promulgation, adoption, application, administration, and enforcement of policies, rules, regulations, and practices of the LASD jails.

23.    Upon information and belief, Plaintiff further alleges that, at all times relevant herein, the individual defendants, and each of them, were the agents, servants, and employees of their respective employers (Defendants County and LASD), and were acting at all times within the scope of their agency and employment with the knowledge and consent of their principals and employers,  At

all times herein, Defendants, and each of them, were acting under the color of state law.

24.     All Defendants' discriminatory conduct was intentional, and/or was done with reckless disregard for, and/or deliberate indifference toward, Plaintiff's rights.

## III.    Facts

1.     The Los Angeles County Sheriff's Department (hereafter "LASD") runs the Men's Central Jail with the adjacent Twin Towers Facility, as well as other jail facilities in Los Angeles County (hereafter "Jail/s").

2.     The Jail maintains, per court order, a separate housing unit for gay men and transgender women, the K6G Unit ("K6G").

3.     A transgender woman is a person who was assigned a male sex at birth, and who identifies as a woman, i.e. her gender identity is female.  California law recognizes a person's gender identity as their gender.[1]

4.     K6G was established in recognition of the extreme sexual violence, harassment, and discrimination transgender women (and gay men) face while incarcerated in the Jail.  For example, recently 34 percent of transgender people held in local jails reported experiencing one or more incidents of sexual

[1] *Cal. Penal Code* § 422.56.

1  victimization, compared to 3.2 percent of the jail population as a whole.2

2  5.      The Jail has also safely housed a number of transgender women in its

3  women's facility, Century Regional Detention Facility ("CRDF").

4  6.      Plaintiff, Coretta Simo Love Monk, a transgender woman, who is recognized

5  as a female by California law, was incarcerated at in the Jail for approximately

6  three months, from November 30, 2018 to March 5, 2019, in the Jail's Twin

7  Towers men's unit.

8  7.      Ms. Monk's California Identification Card, at the time of her booking by

9  Defendants, listed her name as Corey Adam Monk, and her gender as female.

10  8.      When Ms. Monk was first brought to the Jail, Ms. Monk told Doe Defendant

11  intake deputy that processed her into the Jail that she was a transgender woman.

12  9.      Ms. Monk also told Doe Defendant intake deputy that she had a copy of her

13  California identification card with her gender listed as female in her personal

14  items.

15  10.     Ms. Monk made multiple requests of Doe Defendant intake deputy to be

16  placed in a facility consistent with her gender.  These requests were ignored.

17  11.     Ms. Monk, in desperation to be housed safely and appropriately, also

18

19

20  2 U.S. Department of Justice, *PREA Data Collection Activities, 2015,* Office of
Justice Programs, Bureau of Justice Statistics 2 (2015),
http://www.bjs.gov/content/pub/pdf/pdca15.pdf.

1   showed Doe Defendant intake deputy her female breasts as some proof of her

2   female gender identity.

3   12.    Ms. Monk also told Doe Defendant intake deputy that she needed her

4   medically necessary hormone treatment.

5   13.    However, rather than being placed into a unit in the Jail that recognized her

6   female gender identity, such as K6G or CRDF, Doe Defendant intake deputy, with

7   the consent and/or knowledge of some number of Supervisory Defendants,

8   Supervisory Doe Defendants, and Doe Defendants, placed Ms. Monk into a men's

9   unit in Twin Towers.

10   14.    A K6G or CRDF placement would have both recognized Ms. Monk's

11   gender identity as well as increased her physical safety.

12   15.    During Ms. Monk's placement in the men's section of the Jail, she made

13   multiple verbal requests of Doe Defendants working in her unit to be moved to a

14   unit consistent with her gender.  These requests were ignored.

15   16.    During Ms. Monk's time in the Jail, despite making multiple ongoing pleas

16   that Doe Defendants use her correct name and gender pronouns, Ms. Monk was

17   continually and mockingly misgendered by Doe Defendants (all LASD deputies,

18   sergeants, lieutenants, and civilian employees), with Doe Defendants calling her

19   "Mr. Monk" and using male pronouns like he and him to refer to her.

20   17.    Due to Defendants' placement of her in a facility inconsistent with her

gender, Ms. Monk was subject to ongoing, threatening, sexual and verbal harassment by male prisoners.

18.     Despite multiple requests of Doe Defendants working in her unit, begging them to help her, Doe Defendants did nothing to stop the ongoing sexual harassment and threats.

19.     Despite Ms. Monk's repeated requests to Doe Defendants working in her unit, she was denied hygiene items during the entirety of her three month incarceration.

20.     Despite Ms. Monk's repeated requests to Doe Defendants working in her unit, she was also denied the use of a shower for the first two months of her incarceration in the Jail.

21.     Despite Ms. Monk's repeated requests to Doe Defendants working in her unit, Ms. Monk was also denied access to her medically necessary hormone medication for the first two months of her incarceration in the Jail.

22.     Further, when Ms. Monk requested grievance forms and a writing implement so that she could administratively complain about the unlawful and unconstitutional mistreatment she suffered as set forth above, Doe Defendants working in her unit gave her grievance forms but denied her any writing implements with which to fill out the grievance forms.  Several Doe Defendants laughed at Ms. Monk's frustration and mocked her as they denied her a writing

1   implement.  Ms. Monk was also unable therefore to write down the names and/or

2   badge numbers of the Doe Defendants.

3   23.    Due to the continuing sexual harassment and rape threats, and Doe

4   Defendants' constant misgendering, denial of hygiene items, denial of appropriate

5   housing, denial of medically necessary medication, and denial of access to the

6   grievance process, Ms. Monk became actively suicidal.

7   24.    Approximately two months into her incarceration, Ms. Monk's suicidality

8   increased to the point that she was admitted into the Jail's mental health hospital.

9   25.    Once in the Jail's mental health hospital, and after months of begging Doe

10  Defendants for help to no avail, Ms. Monk finally began to receive her medically

11  necessary hormone medication.

12  26.    Ms. Monk was also placed on anti-depressant medication by the Jail medical

13  staff as a result of her suicidal ideation.

14  27.    Subsequent to her time in the mental health hospital at the Jail, Ms. Monk

15  was finally allowed to shower.  However, she was forced to shower in front of

16  male inmates, in violation of her privacy rights under the Prison Rape Elimination

17  Act,[3] California law, and the United States Constitution.  Upon information and

18

19

20  [3] 28 C.F.R. Section 115.42(f), requiring that transgender and intersex inmates,
    regardless of housing area, be provided separate showers from other inmates, due
    to their very high risk of sexual harassment and sexual assault.

MONK COMPLAINT FOR DAMAGES - VIOLATIONS OF 42 U.S.C. § 1983; CAL. CIV. CODE  § 52.1; AND
CAL. CIV. CODE  § 1714. - 12

belief, Defendants' forcing Ms. Monk, a transgender woman, to shower in front of male inmates is allowed by LASD policy, and approved of by the Supervisory Defendants.

28.     As a result of the denial of a toothbrush and toothpaste for over three months, Ms. Monk developed five cavities in her teeth which had to be repaired after she was released from the Jail.

29.     Upon information and belief, Doe Defendant's and Supervisory Defendants placed Ms. Monk into unsafe and discriminatory housing, and continually misgendered, and denied hygiene items and showers, in retaliation for her "crime" of spitting on a police building resulting in her arrest.  This retaliation served no legitimate penological interest.

30.     Upon information and belief, Doe Defendants additionally retaliated against Ms. Monk for requesting grievance forms by continuing to misgender her, denying her access to hygiene articles, denying her access to showers, and once allowing her showers, forcing her to use a shower in front of male inmates, subjecting her to sexual threats and harassment.  This retaliation served no legitimate penological interest.

31.     Upon information and belief, LASD has a discriminatory policy and/or practice of placing certain transgender women into a men's unit in the Twin Towers portion of the Jail, rather than in the K6G Unit or CRDF with the other

women.  The County and LASD, as well as the Supervisory Defendants, are responsible individually and collectively for this unlawful and unconstitutional policy and/or practice.[4]

32.    Ms. Monk's placement into the men's unit, and continual misgendering, was unlawfully and unconstitutionally discriminatory, in violation of equal protection, regardless of the retaliatory nature of the placement.

33.    The placement of Ms. Monk into a men's unit, as well as the continual misgendering of Ms. Monk, the denial of hygiene items, the denial of opportunity to shower, the denial of opportunity to shower in privacy from the gaze of male inmates, and the denial of writing implements when she requested grievance forms and writing implements to grieve the aforementioned violations violated the Prison Rape Elimination Act, California law, and the United States Constitution.

34.    Ms. Monk continues to suffer ongoing emotional distress and mental harm as a result of Defendant's unlawful and unconstitutional actions.

35.    On August 1, 2019, Ms. Monk submitted a government tort claim regarding the above to the County, as required by law, to preserve her state law claims.

36.    On September 19, 2019, the County mailed Ms. Monk a letter with a rejection of her claims.

---

[4] *See Castro v. County of Los Angeles* (9th Cir. 2016) 833 F.3d 1060, 1076.

### IV.    COUNT ONE – 42 U.S.C. § 1983 [FOURTEENTH AMENDMENT, DELIBERATE INDIFFERENCE TO SERIOUS MEDICAL NEED] (AS TO DEFENDANTS DOES 1 THROUGH 20 INCLUSIVE)

37.    Plaintiff re-alleges all the preceding and following paragraphs of, and allegations in, this Complaint.

38.    Appropriate medical care for transgender pre-trial inmates is required under the Fourteenth Amendment's due process clause.

39.    Ms. Monk's treatment at the hands of Defendants was in violation of her right to be free of deliberate indifference to her serious medical need by failing to provide her with her medically necessary hormone treatments, and deliberately and constantly misgendering her, causing her suicidal ideation and mental and emotional trauma, and thereby depriving her of the protection afforded by the Fourteenth Amendment.  Any reasonable person in Defendants' position would know that denying Ms. Monk the above is a violation of her constitutional rights.  Ms. Monk is therefore entitled to damages pursuant to 42 U.S.C. § 1983.

40.    The aforementioned acts of Defendants proximately caused Ms. Monk to be deprived of her rights as stated above, thereby entitling Ms. Monk to damages in an amount to be proven at trial, including punitive damages against the individual defendants.

///

## V.    COUNT TWO – 42 U.S.C. § 1983 [FOURTEENTH AMENDMENT, CONDITIONS OF CONFINEMENT] (AS TO DOES 1 THROUGH 20 INCLUSIVE)

41.    Plaintiff re-alleges all the preceding and following paragraphs of, and allegations in, this Complaint.

42.    Defendants are required under the Fourteenth Amendment to provide constitutional conditions of confinement, including sufficient toiletries, access to showers, adequate privacy in showers from cross-gender viewing, and safety from threats of assault and sexual assault.

43.    Ms. Monk's treatment at the hands of Defendants was in violation of her right to be free of deliberate indifference to the conditions of her confinement, including depriving her of hygiene items for the three months of her incarceration and showers for the first two months of her incarceration, forcing her to shower in front of male inmates, forcing her to endure sexual threats and harassment from male inmates, causing five cavities and mental and emotional trauma, and thereby depriving her of the protection afforded by the Fourteenth Amendment.  Any reasonable person in Defendants' position would know that subjecting Ms. Monk to the above is a violation of her constitutional rights.  Ms. Monk is therefore entitled to damages pursuant to 42 U.S.C. § 1983.

///

44.     The aforementioned acts of Defendants proximately caused Ms. Monk to be deprived of her rights as stated above, thereby entitling Ms. Monk to damages in an amount to be proven at trial, including punitive damages against the individual defendants.

## VI.     COUNT THREE – 42 U.S.C. § 1983 [FOURTEENTH AMENDMENT, EQUAL PROTECTION] (AS TO SUPERVISORY DEFENDANTS AND DOES 1 THROUGH 20 INCLUSIVE)

45.     Plaintiff re-alleges all the preceding and following paragraphs of, and allegations in, this Complaint.

46.     Ms. Monk has a right to Equal Protection under the Fourteenth Amendment.

47.     Ms. Monk's treatment at the hands of Defendants was unequal and was based on her gender identity.  By deliberately and constantly misgendering her, placing her into a men's facility, and forcing her to shower in front of male inmates for the last month of her incarceration, causing her mental and emotional trauma and thereby depriving her of the protection afforded by the Fourteenth Amendment, Defendants violated Ms. Monk's right to Equal Protection.  Supervisory Defendants created or ratified LASD policy that allowed the above constitutional violations to occur.  Ms. Monk is therefore entitled to damages pursuant to 42 U.S.C. § 1983.

48.     The aforementioned acts of Defendants proximately caused Ms. Monk to be deprived of her rights as stated above, thereby entitling Ms. Monk to damages in an

1  amount to be proven at trial, including punitive damages against the individual

2  defendants.

### VII.   COUNT FOUR – 42 U.S.C. § 1983 [FOURTEENTH AMENDMENT, RIGHT TO BODILY PRIVACY] (AS TO DOES 1 THROUGH 20 INCLUSIVE)

49.    Plaintiff re-alleges all the preceding and following paragraphs of, and allegations in, this Complaint.

50.    Ms. Monk has the right to bodily privacy under the Fourteenth Amendment, even while incarcerated.

51.    Ms. Monk's treatment at the hands of Defendants violated her right to bodily privacy by forcing her, as a woman, to shower in front of male inmates for the last month of her incarceration, causing her mental and emotional trauma and thereby depriving her of the protection afforded by the Fourteenth Amendment.   Any reasonable person in Defendants' position would know that subjecting Ms. Monk to the above is a violation of her constitutional rights.  Supervisory Defendants created or ratified LASD policy that allowed the above constitutional violations to occur. Ms. Monk is therefore entitled to damages pursuant to 42 U.S.C. § 1983.

52.    The aforementioned acts of Defendants proximately caused Ms. Monk to be deprived of her rights as stated above, thereby entitling Ms. Monk to damages in an

///

1    amount to be proven at trial, including punitive damages against the individual

2    defendants.

3    **VIII. COUNT FIVE - 42 U.S.C. § 1983 [FIRST AMENDMENT**

4    **RETALIATION] (AS TO DOES 1 THROUGH 20 INCLUSIVE)**

5    53.    Plaintiff re-alleges all the preceding and following paragraphs of, and

6    allegations in, this Complaint.

7    54.    The Defendants interfered with Ms. Monk's right to be free from retaliation

8    under the First Amendment to the United States Constitution, as previously alleged,

9    in the form of placement into a men's unit, constant misgendering, refusal to provide

10   hygiene items, refusal to allow showering then forcing showering in front of male

11   inmates, and refusal to provide requested writing implements for grievance forms.

12   Ms. Monk is therefore entitled to damages pursuant to 42 U.S.C. § 1983.

13   55.    The aforementioned acts of Defendants proximately caused Ms. Monk to be

14   deprived of her rights as stated above, thereby entitling Ms. Monk to damages in an

15   amount to be proven at trial, including punitive damages against the individual

16   defendants.

17   **IX.    COUNT SIX – CAL. CIV. CODE  § 52.1 [BANE ACT] (AS TO**

18   **SUPERVISORY DEFENDANTS AND DOES 1 THROUGH 10 INCLUSIVE)**

19   56.    Plaintiff re-alleges all the preceding and following paragraphs of, and

20   allegations in, this Complaint.

57.     The Defendants interfered with Ms. Monk's right to equal protection under the law under the United States Constitutions, as previously alleged, by threat, intimidation or coercion.

58.     The aforementioned acts of Defendants proximately caused Ms. Monk to be deprived of her rights as stated above, entitling Ms. Monk to statutory damages as provided by Civil Code § 52.1(b) and 52(a) and/or actual damages in an amount to be proven at trial, and to punitive damages.

## X.     COUNT SEVEN – CAL. CIV. CODE § 1714 [NEGLIGENCE] (AS TO SUPERVISORY DEFENDANTS AND DOE DEFENDANTS 1-20 INCLUSIVE)

59.     Plaintiff re-alleges all the preceding and following paragraphs of, and allegations in, this Complaint.

60.     By virtue of the foregoing, Defendants failed in their obligation to adequately: provide Ms. Monk with her medically necessary hormone treatments; refer to Ms. Monk using her correct gender; provide her with hygiene items for the three months of her incarceration, and showers for the first two months of her incarceration; allow her to shower, as any other woman, in privacy from male inmates; and provide requested writing implements for grievance forms.

61.     Doe Defendants had a duty to adequately provide Ms. Monk with the above care, as they were in a social relationship to her as her jailors.

62.    Supervisory Defendants had a duty to ensure that those County and LASD employees they supervise did not breach their above duty.

63.    Doe Defendants and Supervisory Defendants breached their above duties of reasonable care.

64.    The aforementioned breach by Doe and Supervisory Defendants was a substantial factor in causing Ms. Monk's harms, as stated above, thereby entitling Ms. Monk to damages in an amount to be proven at trial.

**XI.    COUNT EIGHT – 42 U.S.C. § 1983 MONELL CLAIM [FAILURE TO ADEQUATELY HIRE, TRAIN, SUPERVISE, AND DISCIPLINE COUNTY EMPLOYEES] (AS TO DEFENDANTS VILLANUEVA IN HIS OFFICIAL CAPACITY, THE COUNTY, AND LASD INCLUSIVE)**

65.    Plaintiff re-alleges all the preceding and following paragraphs of, and allegations in, this Complaint.

66.    By virtue of the foregoing, Defendants failed in their obligation to adequately train County and LASD employees to refrain from: failing to provide Ms. Monk with her medically necessary hormone treatments; deliberately and constantly misgendering her; depriving her of hygiene items for the three months of her incarceration, and showers for the first two months of her incarceration; forcing her to shower in front of male inmates; and refusal to provide requested writing implements for grievance forms.

67.    By virtue of the foregoing, Defendants were deliberately indifferent to the obvious consequences of their failure to adequately hire, train, supervise, and discipline County and LASD employees, The aforementioned acts of Defendants proximately caused Ms. Monk to be deprived of her rights as stated above, entitling Ms. Monk to damages pursuant to 42 U.S.C. § 1983.

///

///

///

///

## XII.   PRAYER

WHEREFORE, Plaintiff requests damages as follows:

(a)    General and special damages according to proof;

(b)    Against individual Defendants only, exemplary and/or punitive damages, according to proof;

(c)    In addition to actual damages, statutory damages as allowed by law, including statutory and treble damages under California Civil Code §§ 52.1 and 52.2;

(d)    Reasonable attorneys' fees and expenses of litigation as provided for by 42 U.S.C. § 1998; California Civil Code §§  52(b)(3), 52.1(h); California Code of Civil Procedure § 1021.5, and whatever other statute or law may be applicable;

(e)      Costs of suit necessarily incurred herein; and,

(f)      Such further relief as the court deems just or proper.

**Dated: March 19, 2020**

By:

Tasha Hill

Attorney for Coretta Simo Love Monk